**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: May 21 2019**

_____
John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-51335 |
| | ) | |
| Frank R. Ragone, Jr., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 18-03070 |
| | ) | |
| Frank R. Ragone, Jr., | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Pizza Pan Elyria, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

This Adversary Proceeding comes before the court on Defendants Stefanik & Christie, LLC and John R. Christie's ("Defendants") Motion for Summary Judgment ("Motion"). [Adv. Doc. #20].   Plaintiff-Debtor Frank Ragone, Jr. filed a Response ("Response") [Adv. Doc. #25], and with permission from the court [Adv. Doc. #30] Defendants filed a Reply Brief ("Reply"). [Adv. Doc. 27].

In their Motion, Defendants seek summary judgment on Plaintiff-Debtor's automatic stay/discharge injunction violation claims, arguing that: 1) Defendants lacked notice of Plaintiff-Debtor's bankruptcy case; 2) that if a violation occurred, Defendants did not act willfully; and 3) that Plaintiff-Debtor cannot meet his evidentiary burden. [Adv. Doc. #20, pp. 4-6]. In his Response, Plaintiff-Debtor argues that summary judgment is inappropriate because genuine issues of material fact regarding Defendants' garnishment actions remain disputed. [Adv. Doc. #25, p. 8]. A Reply Brief [Adv. Doc. #27-1] was filed as an exhibit to Defendants' Motion to File Reply Brief Instanter. [Adv. Doc. #27]. Subsequently, the court entered an Order granting Defendants' motion to file their Reply Brief instanter. [Adv. Doc. #30].

The above captioned Adversary Proceeding was transferred to this court on September 20, 2018 [Adv. Doc. #12], and the case number was changed from 18-05009-amk to 18-03070-jpg. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334, 157(a), and General Order 2012-7 of the United States District Court for the Northern District of Ohio. Actions to determine whether violations of the automatic stay and/or the discharge injunction have occurred are core proceedings that this Court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(A), (b)(2)(O).

Because Plaintiff-Debtor's claims turn on genuine issues of material fact that remain disputed, Defendant's Motion for Summary Judgment will be denied.

## FACTUAL BACKGROUND

On summary judgment the types of evidence the court may consider are governed, in part, by Federal Rule of Civil Procedure 56(c)(1)(A)-(B)[1], which states:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
   (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or
   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

1/ Formerly Fed.R.Civ.P. 56(e).

Federal Rule of Civil Procedure 56(c)(3) further states that: "The court need consider only the cited materials, but may consider other materials in the record."

Plaintiff Frank R. Ragone, Jr. ("Plaintiff" or "Ragone") filed Chapter 7 bankruptcy on May 8, 2013 in Akron, Ohio. *See*, [Case No. 13-51335, Doc. #1[2]; Adv. Case. No. 18-03070, Doc. 25-1, Ex. A & Adv. Doc. 27-1, p. 2.].

At the time of filing, Ragone appears to have owed monies to Pizza Pan Elyria, LLC ("Pizza Pan") and/or Jeffrey A. Boring ("Boring"). [Adv. Doc. #1, p. 4, ¶11; Adv. Doc. #6, p. 2, ¶6; Doc. 27-1, p. 2; Case 13-51335, Claims Register, Claims ##1-1 & 2-1]. These obligations were listed in Ragone's Chapter 7 on Schedule F. [Doc. #1, p. 16; Adv. Doc. #1, p. 4, ¶13].

The Matrix attached to Ragone's Petition reflects that Pizza Pan Elyria, LLC was listed as having an address of "360 Cleveland Street, Elyria, OH 44035". [Doc. #1, p. 38]. Jeffery A. Boring's address was listed in the Matrix as: "Jeffery A. Boring, c/o Anthony Calabrese, III, 2450A One Cleveland Center, 1375 9th Street, Cleveland, OH 44114". *Id.*

The docket in Case 13-51335 reflects that the following notices were mailed, by the Bankruptcy Noticing Center, to Pizza Pan, and to Jeffery A. Boring, c/o Anthony Calabrese:

1. May 16, 2013. *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadline*. [Doc. #5]. This Notice went directly to: "Pizza Pan Elyria LLC, 360 Cleveland Street, Elyria, OH 44035-6142".

2. August 2, 2013. *Notice of Need to File Proof of Claim Due to Recovery of Assets*. [Doc. #17]. This Notice was sent to: "Pizza Pan Elyria, LLC, c/o Anthony O. Calabrese, Esq., 2450 One Cleveland Center, 1475 East Ninth Street, Cleveland, Ohio 44114-1729." After this date, the notice address for Pizza Pan is subtly different from the address used for notices sent to Boring. For Boring the address is ""c/o Anthony Calabrese, III, 2450A One Cleveland Center", for Pizza Pan it is ""c/o Anthony O. Calabrese, Esq., 2450 One Cleveland Center.

3. February 8, 2014. *Notice of Chapter 7 Case Closed Without Discharge*. [Doc.

---

2/  References to the docket in the "Main Case", Case No. 13-51335, will be cited as [Doc. #_].  References to the docket in this Adversary Case, Case No. 18-03070, will be cited as [Adv. Doc. #_].

3

#27].

4. June 20, 2015.   *Discharge of Debtor in a Chapter 7 Case*. [Doc. #34].   Notice was sent to both the original Pizza Pan address at 360 Cleveland Street, and to Pizza Pan "c/o Anthony O. Calabrese, Esq." at the 2450 One Cleveland Center address.

5. June 20, 2015.   *Order Granting Motion to Reopen Chapter 7 Case*. [Doc. #35]. Notice was sent in the same manner as set forth in paragraph 4, for Doc. #34.

Ragone's Chapter 7 case was initially closed without a discharge on February 5, 2014, for failure to "timely file a Financial Management Course Certification (Form 23)". [Doc. #26].

An "Order and Notice of Garnishment" was filed by John R. Christie in Cleveland Municipal Court on June 6, 2014. [Adv. Doc. #25-1, Ex. E, p. 36].   Although it appears there were prior garnishments issued on the judgment against Ragone [*Id.*, Ex. F, pp. 27-32], Exhibit E reflects that the garnishee was Mars Electric, which appears to have been Ragone's employer. [*Id.*, Ex. E, p. 36].

From the docket in the Main Case, it appears that on June 19, 2014, Ragone's attorney filed what is docketed as "First Motion to Reopen Chapter 7 Case". [Doc. #28].   However, all that was included was a Certificate of Debtor Education, with no actual "Motion". *Id.*   An Amended Motion to Reopen Chapter 7 Case was filed at Doc. #29.   The Certificate of Credit Counseling was filed separately (again) at Doc. #30.

A second Amended Motion to Reopen Chapter Seven Case was filed on August 22, 2014. [Doc. #31].   For reasons unknown, the Order Granting Motion to Reopen Case was not entered until June 17, 2015. [Doc. #32].   The Order of Discharge was subsequently entered on June 18, 2015 [Doc. #33], with notice going out from the Bankruptcy Noticing Center as described above.

On May 20, 2016, a "Motion to Reopen Chapter 7 Case and Revoke Discharge" was filed on behalf of "judgment creditor, Stefanik & Christie". [Doc. #37].   The docket entry for Doc. #37 reflects, in part: "Motion to Reopen Chapter 7 Case.   Fee Amount $260 Filed by Creditor Pizza Pan Elyria LLC".   A Notice of Filing Deficiency reflected the need for a Certificate of Service. [Doc. #38].   On May 20, 2016, an Amended Motion, captioned "Motion to Reopen Chapter 7 Case and Revoke Discharge" was filed, with a Certificate of Service. [Doc. #39].   The docket entry for Doc. #39 reflects, in part: "Amended Motion to Reopen Filed by Creditor Pizza Pan

4

Elyria LLC".

In both Motions to Reopen filed on behalf of "judgment creditor, Stefanik & Christie, LLC", the signature line reflected: "John R. Christie (bar number), Stefanik & Christie, LLC, 1375 East 9th Street, Suite 2450, Cleveland, Ohio 44114". [Docs. #37, p. 1; #39, p. 1]. A number of documents were attached to the Motions to Reopen, but no affidavits or other sworn statements were provided, nor were any of the attached documents certified. Notably, one of the documents attached to both Motions appears to be captioned as Cognovit Answer, filed on behalf of Jeffrey A. Boring. [Doc. 37-1, p. 16; Doc. 39-1, p. 16]. The signature line of the Cognovit Answer indicates that it was signed by John R. Christie as attorney for Defendant Boring. *Id.* The file stamp appears to reflect a filing date in January of 2013. *Id.* What appears to be the associated Cognovit Complaint, filed on behalf of "Plaintiff, The Calabrese Law Firm, LLC", more clearly shows what appears to be a file stamp date of January 9, 2013. [Doc. 37-1, Ex. B, p. 14; Doc. 39-1, Ex. B, p. 14].

The Clams Register reflects that on May 31, 2013, two identical (duplicate) claims were filed on behalf of Pizza Pan by Anthony O. Calabrese, Esq. [Case No. 13-51335, Claims 1-1 and 2-1]. The amount claimed, in each proof of claim, was $28,300. [*Id.*] The basis for the claim was listed as "Judgment". [*Id.*] The Certificate of Service reflects it was served upon Ragone's bankruptcy attorney at the time, Rebecca A. Clark. [*Id.*, at p. 4].

The docket does not reflect that any objection was filed to the duplicate claim. The claims register does not reflect that either claim was withdrawn. The Trustee's Final Report, filed November 19, 2013, reflects that that claim 2-1 is a "duplicate", and it is listed at "$0.00". [Doc. #21, p. 5 ("REVIEWED CLAIM. DUPLICATE OF CLAIM NO. 1.")]. The Trustee's Final Report also indicates that "PIZZA PAN ELYRIA, LLC" was to receive a proposed payment of "736.76". [Doc. #21, p. 7]. Similarly, the document referred to on the docket as "Zero Bank Statement/Final Account", also known as "UST Form 101-7-TDR", reflects that Pizza Pan Elyria, LLC was paid "736.76" on Claim 1-1. [Doc. #25, p. 4].

The following evidence was submitted by Defendants in support of their Motion for Summary Judgment:

In Defendants Answer, only the following two paragraphs were admitted[3] pursuant to Federal Rule of Civil Procedure 8(b), made applicable by Federal Rule of Bankruptcy Procedure 7008:

> 9. The defendant, **STEFANIK & CHRISTIE, LLC**, is a limited liability company incorporated under the laws of the State of Ohio, registered as "active" with the Office of the Ohio Secretary of State, has its principal place of business in Cleveland, Ohio and has designated John R. Christie, as statutory agent for service of process.

> 10. The defendant, **JOHN R. CHRISTIE**, had, at all times pertintinent [sic] hereto, an ownership interest in **STEFANIK & CHRISTIE, LLC**, and has acted on behalf of the interests of both **STEFANIK & CHRISTIE, LLC**, and his personal interests, all in violation of the Automatic Stay provisions of 11 U.S.C. §362, and the Permanent Injunction provisions of 11 U.S.C. §524.

[Adv. Case No. 18-03070, Doc. #1, p. 4; Doc. #6, p. 2, ℙ5].

The Motion also includes an Affidavit of John R. Christie, which states in pertinent part:

> 3. Pursuant to a lease entered into with an entity owned and/or controlled by Anthony O. Calabrese, Stefanik & Christie sublet offices in a suite wherein Anthony O. Calabrese and his law firm, The Calabrese Law Firm, were housed;

> 4. Mail was delivered to the front desk of the suite located at 2400 One Cleveland Center, Cleveland, Ohio 44114;

> 5. The front desk was overseen, controlled, and otherwise occupied by Representatives employed by The Calabrese Law Firm;

> 6. Said individuals received the mail and distributed the same as directed by Anthony O. Calabrese and/or his employees and/or agents.

> 7. Stefanik & Christie never received notice of the Petitioner's Bankruptcy filing;

---

3/ Although Fed.R.Civ.P. 8(b)(4) allows allegations to be admitted in part and denied in part, these two allegations were admitted in full. *See*, [Doc. #6, p. 2, ℙ5 ("5.   These Answering Defendants admit the allegations contained in Paragraphs 9 and 10 of Plaintiffs' Complaint.")].

8.  Stefanik & Christie never received notice of any Stay due to the Bankruptcy filing;

9.  Stefanik & Christie's first notice of the Bankruptcy was after the Garnishment proceeding was filed;

10. Stefanik & Christie agreed to terminate the garnishment proceeding and not contest the release of any garnished funds from the Cleveland Municipal Court to the Petition

[Doc. #20, pp. 8-9].

Plaintiff's Response Brief includes the Affidavit of Robert C. Wentz, attached as Exhibit I, which states that Mr. Wentz is "an attorney duly licensed to practice law in the State of Ohio at all relevant times." [Doc. #25-1, p. 47, ⁋1].

The Wentz Affidavit further states:

(2) I was retained by Frank Ragone to terminate a wage garnishment against him in matter of Pizza Pan Elyria LLC v. Francesco Pizza LLC and Frank Ragone, Case Number 2013 CVH 007053 in Cleveland Municipal Court.

(3) Frank Ragone's wages were being garnished due to a default judgment that was issued against him on April 30, 2013 in the same case. The judgment appears to have been discharged in Frank Ragone's Chapter 7 bankruptcy case.

(4) In March of 2016, I contacted Attorney John Christie, whose law firm was then the judgment creditor, and inquired as to why the wage garnishment was ongoing in light of the bankruptcy discharge. Attorney Christie was not amenable to dismissing or terminating the wage garnishment.

(5) On April 8, 2016, I filed an Emergency Motion to Stay Disbursements and Terminate Wage Garnishment in the Cleveland Municipal Court which was granted on July 13, 2016.

(6) On April 8, 2016, I sent a copy of the Emergency Motion to Attorney Christie with the cover letter attached hereto as Exhibit "A", which is a true and accurate copy of the original.

7

(7) I charged Mr. Ragone a flat fee of $500.00 to represent him in the termination of the wage order. Mr. Ragone paid me $500.00 on April 7, 2016.

[Doc. #25-1, Ex. I, pp. 47-48].

The cover letter described in paragraph 6 of the Wentz Affidavit is attached as Exhibit A to that document. [Doc. #25-1, p. 49].

In addition to the Affidavit of Robert C. Wentz, Exhibits A through H were also attached to Plaintiff's Response:

**Exhibit A** – a copy of the docket in Frank R. Ragone's Chapter 7 case [13-51335], Ending with docket entry number 69, entered on March 9, 2018.

**Exhibit B** – a copy of the Claims Register in Frank R. Ragone's Chapter 7 case.

**Exhibit C**[4] – a copy of the Discharge, dated on June 18, 2015. [Doc. #33]

**Exhibit D** – Assignment and Assumption Agreement, which had previously been attached to Defendants' Amended Motion to Reopen Bankruptcy and Revoke Discharge. [Doc. #39-1, pp. 23-25].

**Exhibit E** – Order and Notice of Garnishment Agreement, which had previously been attached to Defendants' Amended Motion to Reopen Bankruptcy and Revoke Discharge. [Doc. #39-1, p. 36].

**Exhibit F** – a copy of the Cleveland Municipal Court docket for Case Number 2013 CVH 007053, certified as a true and accurate copy by Earle B. Turner, Clerk.

**Exhibit G** – Described in the Index as a "Copy of Costs" for Cleveland Municipal Court Case Number 2013 CVH 007053, certified by Earle B. Turner, Clerk [certification describes the docket as a "Copy of Cost's"].

**Exhibit H** - Described in the Index as a "Disbursement of Garnishment Proceeds" for Cleveland Municipal Court Case Number 2013 CVH 007053, certified by Earle B. Turner, Clerk [certification describes the docket as a "Copy of Disbursement"].

[Doc. #25-1, Ex. A-H, pp. 1-46].

Neither party objected to the exhibits offered by the opposing party under Federal Rule of Civil Procedure 56(c)(2). *See generally*, *In re LTC Holdings, Inc.*, 596 B.R. 797, 802 n. 14 (Bankr. D. Del. 2019)(discussing the 2010 amendments to Rule 56 streamlining the summary judgment process).

---

4/ There is an "INDEX OF EXHIBITS" attached to the Response. [Doc. #25-1, p. 1]. Exhibit C is mislabeled in the Index as "Cleveland Municipal Court Docket for case number 2013 CVH 007053" – it is actually the Order of Discharge. [Doc. #33].

There are additional documents, not included as exhibits to the Response, that are attached to Defendants' Amended Motion to Reopen Bankruptcy and Revoke Discharge. [Case No. 13-51335, Doc. #39-1, p. 36]. However, neither party made any specific reference to those additional documents in their pleadings. Thus, Federal Rule of Civil Procedure 56(c)(3) permits, but does not require, the court to consider those documents filed in the underlying Chapter 7 case.

It should be noted that statements made in briefs are not facts that the court can consider in deciding a motion for summary judgment. *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006)("It is well established that statements appearing in a party's brief are not evidence."); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)("mere conclusions and unsupported factual allegations are legally insufficient" on summary judgment); *Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002)("it is universally known that statements of attorneys are not evidence"); *Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3rd Cir. 1993)("we have repeatedly held that unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court"); *Estrella v. Bryant*, 682 F.2d 814, 819 (9th Cir. 1982)("Legal memoranda and oral argument are not evidence"); *Simmons v. Rogers*, No. 2017 WL 1179376 at * 1, 2017 U.S. Dist. LEXIS 47185 at *3 (W.D. Mich. Mar. 30, 2017)(quoting *Duha*); *Ward v. J.C. Penney Co., Inc.*, 2015 WL 3971194 at **3-4, 2015 U.S. Dist. LEXIS 84649 at **10-12 (W.D. Tenn. June 30, 2015); *Pawlaczyk v. Besser Credit Union*, 2015 WL 4208649 at *10, 2015 U.S. Dist. LEXIS 90591 at *26 (E.D. Mich. April 13, 2015)("Consequently, '[i]t is well established that statements appearing in a party's brief are not evidence.'"); *Sideridraulic System SpA v. Briese Schiffahrts GmbH & Co. KG*, 2011 WL 3204521 at *2, 2011 U.S. Dist. LEXIS 82559 at *8 (S.D. Ala. July 26, 2011)("A party's mere say-so, which is all movants provided in support of the vast majority of the 'facts' tendered, is simply not good enough to establish a right to summary judgment."); *McIntosh v. Carter*, 578 F.Supp. 96, 99 (W.D. Ky. 1983)("Statements made in the Commonwealth's briefs are not evidence."); *In re Fabrizio*, 369 B.R. 238, 246-247 (Bankr. W.D. Pa. 2007)("in deciding summary judgment motions, unsubstantiated arguments made in briefs or at oral argument do not constitute evidence for purposes of consideration"); *Westport Taxi Service, Inc. v. Westport Transit District (In re Westport Transit District)*, 141 B.R. 543, 545 (Bankr. D. Conn. 1992)(facts set forth solely in memorandum of law do not constitute part of record on which findings of fact can be based); *In re Carter*, 74 B.R. 613, 615 n. 3 (Bankr.

E.D. Pa. 1987)(factual assertions set forth in legal memoranda are not in evidence and cannot be considered). Accordingly, statements from the briefs that lack record support do not appear in the "Factual Background" section because they are not evidence the court can properly consider as supporting the Motion for Summary Judgment.

**LAW AND ANALYSIS**

    **1. Summary Judgment Standard.**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by showing that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials ... without giving any significant probative evidence to support" its position. *Berryman v. Rieger*,

10

150 F.3d 561, 566 (6th Cir. 1998).

*Anderson* clearly states that the allocation of the substantive evidentiary standard of proof is a factor that the court should consider in deciding whether to grant summary judgment. 477 U.S. at 252-255, 106 S.Ct. at 2512-2514.

### 2. The Automatic Stay.

In describing the scope of the automatic stay, the Sixth Circuit Court of Appeals has held:

> Under section 362(a) of the Bankruptcy Code, the filing of a petition creates a broad automatic stay protecting the property of the debtor. This provision "has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws.'" *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)). The automatic stay extends to virtually all formal and informal actions against property of the bankruptcy estate. It is intended to "stop[ ] all collection efforts, all harassment, and all foreclosure actions." S.Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5840. The automatic stay "is effective upon the date of the filing of the petition ... and formal service of process will not be required." 2 Collier on Bankruptcy ¶ 362.03 (15th ed. 1988) (footnotes omitted). Actions taken in violation of the automatic stay generally are void, even if the creditor had no notice of the stay. *See, e.g.*, *In re Clark*, 60 B.R. 13, 14 (Bankr. N.D. Ohio 1986) (Creditor "had not known of Debtor's filing at the time of repossession but ... it was, nonetheless, required to return the vehicle to Debtor."); *In re Advent Corp.*, 24 B.R. 612 (Bankr. 1st Cir. 1982) (acts in violation of automatic stay are void regardless of lack of knowledge); Collier, supra, ¶ 362.03 ("In general, actions taken in violation of the stay will be void even where there was no actual notice of the existence of the stay.").

*In re Smith*, 876 F.2d 524, 525-526 (6th Cir. 1989); *see also*, *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993)("…actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances.").

As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition. *See*, 11 U.S.C. § 362(a)(1); *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012).

With regards to parties responsible for enforcing the automatic stay in the context of

11

collection proceedings, a recent decision by the Sixth Circuit Bankruptcy Appellate Panel stated:

> As a general matter, the responsibility to enforce the automatic stay is placed on creditors because "[t]o place the onus on the debtor, ... to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory." *Ledford v. Tiedge (In re Sams )*, 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989) (alterations in original) (quoting *Miller v. Sav. Bank of Balt. (In re Miller )*, 22 B.R. 479, 481 (D. Md. 1982) ) (internal quotation marks omitted).
>
>> [It is] incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.
>
> *In re Webb*, 472 B.R. 665 (6th Cir. BAP 2012) (alteration in original) (quoting *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000)).

*In re Wohleber*, 596 B.R. 554, 572 (6th Cir. BAP 2019); *see also*, *In re Humbert*, 2016 WL 450186 at *3, 2016 Bankr. LEXIS 3148 at *10 (Bankr. N.D. Ohio Aug. 26, 2016)("When a creditor violates the automatic stay by taking postpetition collection actions, even without knowledge of the bankruptcy proceeding, there is an affirmative duty to restore the status quo."); *In re Witham*, 579 B.R. 787, 793 (Bankr. E.D. Ky. 2017)("[E]ven if it is questionable whether a creditor knew of a debtor's bankruptcy at the time of the alleged stay violation, if the creditor 'thereafter acquire[s] actual knowledge of the debtor['s] bankruptcy and fail[s] to take steps to undo and correct the ... result,' that constitutes willful conduct by the creditor"); *In re Smith*, 170 B.R. 111, 116 (Bankr. N.D. Ohio 1994)("A creditor who violates the automatic stay has an affirmative duty to restore the status quo."); *In re Dungey*, 99 B.R. 814, 816 (Bankr. S.D. Ohio 1989)("A creditor who has initiated collection action without knowledge of a bankruptcy petition has an affirmative duty to restore the *status quo* without the debtor having to seek relief from the Bankruptcy Court.").

### 3. The Defense Of Lack Of Notice Regarding The Existence Of The Stay.

Defendants assert that they "never" received notice of Plaintiff's bankruptcy [Adv. Doc.

#20, p. 9], but concede that actual notice was received "after the garnishment proceeding was filed". [*Id.*]. They cite to the statement in the Christie Affidavit that The Calabrese Law Firm and/or Calabrese served as "gatekeeper" for the mail coming into the suite as demonstrating that Plaintiff cannot establish Defendants' liability. [Adv. Doc. #20, p. 5].

Plaintiff's Response [Adv. Doc. #25, p. 6], cites to a passage in *In re Perviz* that holds that "bankruptcy law not only requires, but demands, that companies, whether large or small, have in place procedures to ensure that formal bankruptcy notices sent to an internally improper, but otherwise valid corporate address are forwarded in a prompt and timely manner to the correct person/department." *In re Perviz*, 302 B.R. 357, 367 (Bankr. N.D. Ohio 2003); *see also*, *In re Hill*, 523 B.R. 704, 714 (Bankr. D. Mont. 2014); *In re Garcia*, 2013 WL 414177 at *7, 2013 Bankr. LEXIS 404 at **21-22 (Bankr. W.D. Tex. Feb. 1, 2013); *In re Roberson*, 2016 WL 6783301 at *6, 2016 Bankr. LEXIS 3944 at **19-20 (Bankr. N.D. Ohio Nov. 10, 2016)(citing cases); *In re Blackaby*, 2006 WL 3885134 at *2, 2006 Bankr. LEXIS 3799 at *7 (Bankr. E.D. Ky. Sept. 21, 2006).

Viewing the facts in the light most favorable to the non-moving party, there appear to be several possible failures to provide for the handling of notices that may, depending on the facts presented at trial, give rise to constructive or imputed notice, or even a finding of actual notice:

1.     The Affidavit of John R. Christie states: "Pursuant to a lease entered into with an entity owned and/or controlled by Anthony O. Calabrese, Stefanik & Christie sublet offices in a suite wherein Anthony O. Calabrese and his law firm, The Calabrese Law Firm, were housed". [Adv. Doc. #20, p. 8]. Under the *Perviz* line of cases, where one law firm leases space from another law firm, procedures for the handling of mail of legal significance could, depending on the facts, require that the lawyers forward mail to the correct person or firm. There is nothing in the record about the terms of the lease, or what steps Defendants took to ensure that they promptly received legal notices.

2.     The Assignment and Assumption Agreement was an agreement made between two law firms and was signed by individual defendant John R. Christie. Despite the legal sophistication of the parties, the Assignment makes no provision for the handling of notices regarding the underlying litigation. [Adv. Doc. #25-1, Ex. D, pp. 23-25]. Nor does it appear that there were any representations and/or warranties included in the agreement. After the Assignment

13

became effective on July 14, 2013, the docket in the main case reflects the following notices being mailed to Plaintiff-Ragone's creditors by the bankruptcy court: August 2, 2013. *Notice of Need to File Proof of Claim Due to Recovery of Assets.* [Doc. #17]; February 8, 2014. *Notice of Chapter 7 Case Closed Without Discharge*. [Doc. #27]; June 20, 2015. *Discharge of Debtor in a Chapter 7 Case*. [Doc. #34]; June 20, 2015, *Order Granting Motion to Reopen Chapter 7 Case*. [Doc. #35].

3.       It appears that Pizza Pan Elyria, LLC was mailed the initial bankruptcy notice regarding Plaintiff-Ragone's bankruptcy filing [Doc. #5], as well as the Notice of Discharge. [Doc. #34].   After the Assignment of Pizza Pan's Elyria, LLC's claims against Ragone to Stefanik & Christie, there is no evidence to reflect whether contact was initiated with Pizza Pan, and whether any inquiries were made regarding the status of the underlying case, particularly if there were concerns[5] regarding the distribution of mail, including legal notices.

4.       To the extent Defendants assert[6] (without citing any record evidence) that Anthony Calabrese was a client, Mr. Calabrese was mailed all of the bankruptcy notices, and the same issue exists regarding what procedures were in place and what inquiries were made regarding the legal notices that were sent to Mr. Calabrese.

With virtually no cognizable record evidence having been submitted in support of the Motion for Summary Judgment, coupled with the admission in Defendants' Answer that John R. Christie "acted on behalf of the interests of both **STEFANIK & CHRISTIE, LLC**, and his personal interests, all in violation of the Automatic Stay provisions of 11 U.S.C. §362" [Adv. Doc. #6, p. 2, ⁋5], dismissal of Plaintiff's cause of action based upon violation of the automatic stay does not appear to be warranted.

**4.   The Discharge Injunction.**

A bankruptcy discharge:

(1) voids any judgment at any time obtained, to the extent that such judgment is a

---

5/  The Defendants make allegations about Mr. Calabrese in their pleadings. [Adv. Doc. #20, pp. 3, 5, 6; #27-1, pp 2 & 3].   However, there does not appear to be any citation to record evidence regarding these allegations that the court could consider on summary judgment. *See*, *Duha*, 448 F.3d at 879.   The record does reflect that the Calabrese Law Firm and Anthony Calabrese, III were dismissed as co-defendants in this action, along with Pizza Pan Elyria, LLL and Jeffrey A. Boring. [Adv. Doc. #9].

6/  *See e.g*., [Doc. #27-1, p. 1 ("The Calabrese Law Firm, LLC and/or Anthony Calabrese, III, which had acquired the judgment against the Plaintiff subsequently, retained Stefanik and Christie to pursue claims relative to the debt.")].

determination of the personal liability of the debtor with respect to any debt discharged under [the Code] ... [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ....

11 U.S.C. Section 524(a)(1)-(2).

The effect of a bankruptcy discharge on a judgment is described in Collier on Bankruptcy as follows:

Section 524(a)(1) provides that any judgment on a debt that is discharged is void as a determination of the debtor's personal liability. Section 524(a)(1) clearly pertains to judgments obtained both before and after the discharge order, in that it refers to "any judgment at any time obtained."

\* \* \* \* \* \* \*

Section 524(a) is meant to operate automatically, with no need for the debtor to assert the discharge to render the judgment void. Because of the language that such a judgment is void, "whether or not discharge of such debt is waived," a creditor cannot claim that the voidness of the judgment was waived under a theory of estoppel[7] when a debtor fails to raise the discharge as a defense.

4 Collier on Bankruptcy, ¶524.02[1] (16th ed. 2019)(citing *Lone Star Sec. & Video v. Gurrola (In re Gurrola)*, 328 B.R. 158 (9th Cir. BAP 2004)); *see also*, *In re Jones*, 389 B.R. 146, 163 (Bankr. D. Mont. 2008).

Accordingly, viewed in the light most favorable to the non-moving party, the Pizza Pan judgment, upon which Defendants relied in seeking to garnish the wages of Ragone, was void as of June 18, 2015, when the discharge was entered. [Doc. #33].

The Sixth Circuit Court of Appeals has cited Collier in rejecting arguments that seek to

---

7/    *See also*, *In re Banks*, 577 B.R. 659, 666-667 (Bankr. E.D. Va. 2017)("The gravamen of Baumann's defense is that the Debtor did nothing to mitigate his damages and that the Debtor's recovery should be limited to the funds Baumann holds in escrow. Relying on *In re Sheets*, Case No. 12-31723, 2014 WL 4831339, at *4 (Bankr. E.D. Va. Sept. 29, 2014), Baumann argues that the trial of this matter could have been avoided, if only the Debtor had asked for the money back. This argument ignores that it was Baumann who had the affirmative duty to remit to the Debtor the wages Baumann had unlawfully garnished.")(footnote omitted).

15

blame debtors for failing to assert the discharge, stating that §524(a) was "designed 'to effectuate the discharge and make it unnecessary to assert it as an affirmative defense in a subsequent action.'" *In re Hamilton*, 540 F.3d 367, 3723 (6th Cir. 2008). "[T]he debtor need not raise his discharge in bankruptcy as an affirmative defense, because thanks to § 524(a) 'such an affirmative defense is unnecessary and has been since 1970.'" *Hamilton*, 540 F.3d at 373 (quoting *Braun v. Champion Credit Union (In re Braun)*, 141 B.R. 133, 138 (Bankr. N.D. Ohio 1992)(Krasniewski, J.)).

Further, there is case law suggesting that where there has been a garnishment of funds based upon a discharged debt, regardless of notice, the full amount of the post-discharge garnishments should be ordered returned. *See*, *In re Thal*, 2018 WL 2182304 at \*4, 2018 Bankr. LEXIS 1308 at \*\*10-11 (Bankr. S.D. Fla. May 9, 2018); *In re Banks*, 577 B.R. 659, 667 (Bankr. E.D. Va. 2017)("This argument ignores that it was Baumann who had the affirmative duty to remit to the Debtor the wages Baumann had unlawfully garnished."); *Pritner v. COFCO Credit Co., L.L.C. (In re Pritner),* 323 B.R. 802 (Table), 2005 WL 705363 at \*3, 2005 Bankr. LEXIS 404 at \*9 (10th Cir. BAP March 21, 2005); *In re Venegas*, 257 B.R. 41, 47-48 (Bankr. D. Idaho 2001); *In re Griffin*, 108 B.R. 717, 720 Bankr. W.D. Mo. 1989).

Because the record does not reflect whether all funds that were garnished after the judgment was rendered void were returned to the Plaintiff, there is a genuine issue of material fact that needs to be resolved at trial.

### 5. The Standard of Proof.

Movant argues that: "As this court is aware, the burden of proof to pursue the present claim is one of clear and convincing evidence. See *Brockington* 129 BR [68] at 70; *In re: Zunich*, 88 B.R. 721 (Bankr. W.D. Pa. 1988); and *In Re: Wagner*, 74 B.R. 898 (Bankr. E.D. Pa. 1987)." [Adv. Doc. #20, p. 4].

Two of the cases[8] cited by Movant – *In re Brockington*, 129 B.R. 68 (Bankr. D.S.C. 1991) and *In re Zunich* - deal with §362(h), the pre-BAPCPA version of §362(k)(1). However, the change in the statute is not the reason why the holdings regarding "clear and convincing evidence"

---

8/ *In re Wagner*, 74 B.R. 898, 901 (Bankr. E.D. Pa. 1987) dealt with a *pro se* complaint that did "not articulate his precise legal theory for recovery.... Specifically, he has not distinguished between a civil contempt proceeding and a proceeding under 11 U.S.C. §362(h)."

in *Brockington* and *Zunich* are no longer good law.

In 1991, the United States Supreme Court, in *Grogan v. Garner*, held that: "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake." 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)(quotation omitted).

More recent case law holds that in order to prevail on a §362(k) claim, a plaintiff must prove by a preponderance of the evidence that the stay imposed under §362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation. *In re Grine*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010); *see also*, *In re McCormick*, 2018 WL 6787558 at *5, 2018 Bankr. LEXIS 4041 at *12 (6th Cir. BAP Dec. 26, 2018); *In re Baer*, 2012 WL 2368698 at *10, 2012 Bankr. LEXIS 2849 at *27 (6th Cir. BAP June 22, 2012); *Collett v. Lee Oil Company, Inc. (In re Collett)*, 2014 WL 2111309 at *4, 2014 Bankr. LEXIS 2250 at *10 (6th Cir. BAP May 21, 2014); *In re Shrum*, 597 B.R. 845, 856 (Bankr. E.D. Mich. 2019); *In re Witham*, 579 B.R. 787, 792-793 (Bankr. E.D. Ky. 2017); *In re Mocella*, 552 B.R. 706, 714 (Bankr. N.D. Ohio 2016); *In re Mitchell*, 545 B.R. 209, 220 (Bankr. N.D. Ohio 2016)[9]; *In re Phillips*, 2015 WL 4356641 at *2, 2015 Bankr. LEXIS 2305 at *6 (Bankr. E.D. Tenn. July 13, 2015)(quoting *Collett*); *In re Swartzentruber*, 2014 WL 2930450 at *1, 2014 Bankr. LEXIS 2804 at *3, (Bankr. N.D. Ohio June 27, 2014); *In re Pawlowicz*, 337 B.R. 640, 646 (Bankr. N.D. Ohio 2005); *In re Skeen*, 248 B.R. 312, 316–17 (Bankr. E.D. Tenn. 2000).

Section 362(k)(1) states:

(1)  Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

---

9/  Other recent decisions by Judge Harris holding that a "preponderance" standard applies to actions under §362(k) include: *In re Addleman*, 2018 WL 5797709 at *5, 2018 Bankr. LEXIS 3370 at *13 (Bankr. N.D. Ohio Nov. 2, 2018); *In re Hancock*, 2018 WL 3203383 at *3, 2018 Bankr. LEXIS 1954 at *7 (Bankr. N.D. Ohio June 28, 2018); *In re McDuffie*, 2017 WL 3098099 at *5, 2017 Bankr. LEXIS 2006 at *13 (Bankr. N.D. Ohio July 20, 2017); *In re Roberson*, 2016 WL 6783301 at *5, 2016 Bankr. LEXIS 3944 at *16 (Bankr. N.D. Ohio Dec. 10, 2016); *In re Humbert*, 2016 WL 4508186 at *2, 2016 Bankr. LEXIS 3148 at *5 (Bankr. N.D. Ohio Aug. 26, 2016); *In re Williams*, 2016 WL 4065938 at *2, 2016 Bankr. LEXIS 2719 at *5 (Bankr. N.D. Ohio July 27, 2016); *In re Docherty*, 2016 WL 675835 at *4, 2016 Bankr. LEXIS 511 at *12 (Bankr. N.D. Ohio Feb. 18, 2016).

17

Under §362(k), damages must be proven with reasonable certainty and cannot be based on conjecture or speculation. *See*, *Archer v. Macomb Cnty. Bank (In re Archer)*, 853 F.2d 497, 499–500 (6th Cir. 1988). As the party seeking damages, the debtor has the burden of proving entitlement to damages. *In re Sharon*, 234 B.R. 676, 687 (6th Cir. BAP 1999)("The bankruptcy court appropriately assigned to the Debtor the burden to prove entitlement to damages.").

Courts have awarded punitive damages under §362(k) for a willful violation of the automatic stay based upon the preponderance of the evidence standard. *See e.g*., *In re Addleman*, 2018 WL 5797709 at *10, 2018 Bankr. LEXIS 3370 at *13 (Bankr. N.D. Ohio Nov. 2, 2018). An award of punitive damages is within the bankruptcy court's discretion where actual damages are an insufficient deterrent to further violations. *Archer*, 853 F.2d at 500.

In contrast, for the court to find a violation of the discharge injunction to be contempt, the standard remains one of "clear and convincing evidence". *See*, *In re Botson*, 531 B.R. 719, 724 (Bankr. N.D. Ohio 2015)(citing *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir.2006)). While some courts have held that constructive knowledge can give rise to contempt, other courts, including those in the Sixth Circuit, have required actual knowledge.[10] *See*, *In re Hamaoui*, 2016 WL 4991504 at *2, 2016 Bankr. LEXIS 3382 at *5 (Bankr. N.D. Ohio Sept. 16, 2016)(citing cases). In either case, issues regarding a defendant's knowledge of the discharge injunction are fact-intensive and are best resolved after an evidentiary hearing. *See*, *In re Haltermon*, 592 B.R. 311, 320 (Bankr. S.D. Ohio 2018)(quoting *In re Zilog, Inc*., 450 F.3d 996, 1007 (9th Cir. 2006)("knowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing.")).

### 6. The Defense Raised To Claims Against John R. Christie Personally.

Movant John R. Christie argues that:

> As to the claims against John R. Christie personally, a review of all Federal Bankruptcy law and case law does not indicate any instance where an individual can be held liable for the actions of an LLC and/or any other entity other than the individual. Notwithstanding the same, Ohio Revised Code § 1705.48(B), provides the Court with some guidance. Specifically, it states "neither the members of the limited liability company nor any managers of the limited liability company are

---

10/ The law regarding the discharge injunction may be clarified by a pending case that has been argued to the United States Supreme Court. *See*, *Taggart v. Lorenzen*, 139 S. Ct. 782, 783, 202 L. Ed. 2d 511 (2019)(granting petition for a writ of certiorari).

personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any matter a debt, obligation or liability of the company solely by reason of being a member or manager of a limited liability company." *Sliman's Printing, Inc. v Vello International*, Stark App. No. 2004 CA 00095, 2005 Ohio 173 and *Dover Phila Hearing & Cooling, Inc. v. SJS Restaurants, Ltd*, 5th District No. 2009-AP 010001, 185 Ohio App. 3rd 107, 2009 Ohio 6187, 923 N.E.2nd 220. In other words, regardless of any liability that may exist on behalf of Stefanik & Christie, which the case law demonstrates there should be none, there certainly cannot be any liability as to any of the individual members or managers of the LLC. Therefore, the claims against John R. Christie must fail as a matter of law.

[Adv. Doc. #20, pp. 4-5].

In his Response, Plaintiff states: "Defendant, John R. Christie, asserts he is unaware of any case holding counsel equally in contempt of court, with the client represented. Apparently, defendant did not research this issue. The following cases, among many, hold counsel equally subject to sanctions. *Burton v. Mouser*, 2010 Bankr. LEXIS 675; 2010 WL 996537; *In re: Joseph*, 584 B.R. 696; 2018 Bankr. LEXIS 329". [Adv. Doc. #25, p. 8].

The defense asserted by Movant John R. Christie has been raised in a number of cases by attorneys attempting to defend against violations of the automatic stay and contempt. An older decision, which remains influential, echoes Movant's argument, but also reflects the position of most bankruptcy courts:

Mr. Lufkin next asserts that he "knows of no law that would support a personal action against him by motion for his representation or lack thereof, [sic] for his own client in a bankruptcy case." Contrary to Mr. Lufkin's assertion, there are numerous instances in which attorneys have been found to have violated the automatic stay as a result of their actions or omissions on behalf of their client and have been sanctioned accordingly. *See Stainton v. Lee (In re Stainton)*, 139 B.R. 232, 234 (9th Cir. BAP 1992) (counsel and creditor/client sanctioned for violating stay by proceeding with detainer action in state court after bankruptcy filing); *Zick v. Zick (In re Zick)*, 123 B.R. 825, 826 (Bankr. E.D. Wis. 1990) (attorney and client sanctioned for postpetition filing of modification of property division in state court in violation of stay); *In re McGinty*, 119 B.R. at 296 (attorney violated stay by seeking additional spousal support for client after receiving notice of bankruptcy); *In re Hooker Investments, Inc.*, 116 B.R. at 383 (attorney but not client sanctioned for substituting party plaintiff in state court proceeding in violation of the stay);

19

*Matter of Sams*, 106 B.R. at 490 (attorney and creditor/client sanctioned for violating stay by not taking any action to stop sheriff's postpetition foreclosure sale which they had put into motion prepetition); *In re Zumbrun*, 88 B.R. at 251 (attorney sanctioned for postpetition filing of state court lawsuit on behalf of client in violation of stay); *Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.)*, 84 B.R. 377, 384 (Bankr. E.D. Pa. 1988), *aff'd*, 96 B.R. 29 (E.D. Pa. 1989), *aff'd*, 879 F.2d 856 (3rd Cir. 1989), *cert. denied*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989) (attorney's failure to dissolve writ of execution after court found client/creditor in contempt for failure to do so upon bankruptcy filing justified additional sanctions against attorney); *Matter of Mullarkey*, 81 B.R. at 284–85 (attorneys but not creditor/client sanctioned for directing sheriff to proceed with foreclosure sale in violation of stay); *In re Crabtree*, 60 B.R. 147, 150 (Bankr. E.D. Tenn. 1986) (law firm, its named partner and local counsel sanctioned for violating automatic stay by obtaining restraining order); *In re Demp*, 23 B.R. 239, 240 (Bankr. E.D. Pa. 1982) (creditor/client and counsel sanctioned for violating automatic stay by having debtor's property posted for sheriff's sale); *Bailey v. Bailey (Matter of Bailey)*, 20 B.R. 906, 913 (Bankr. W.D. Wis. 1982) (attorney but not creditor/client sanctioned for securing lien on debtor's homestead in violation of stay). *See also* J. Scott Humphrey, Comment, Sanctions Against the Creditor's Attorney in Non–Reorganization Bankruptcy Proceedings, 6 BANKR.DEV.J. 481 (Fall 1989); EPSTEIN, *supra,* ("Damages are recoverable under § 362(h) from any entity responsible for the violation.... Significantly, the people accountable include not only the person whose actions violated the stay, but also people who counselled or aided the actions, including the actor's lawyer.").

*In re Timbs*, 178 B.R. 989, 995 (Bankr. E.D. Tenn. 1994).

Subsequently, courts have issued decisions with a similar tone, following *Timbs*. *See e.g.*, *In re Frankel*, 391 B.R. 266, 271 n. 6 (Bankr. M.D. Pa. 2008)("Wix does not argue that he did not violate the stay because he only acted in a representative capacity to advance Strayer's interests. Numerous courts have found attorneys to be personally liable for damages under § 362(h) even when their actions were undertaken only within the scope as counsel for a creditor."); *In re Renzulli*, 2015 WL 9777743 at *6, 2015 Bankr. LEXIS 4435 at *15, (Bankr. D. N.J. Nov. 23, 2015)[11].

---

11/    "Ms. Ullman argues that she is not a "creditor" and the action did not give rise to a "claim" as defined by sections 101(5) and (10). This argument misses the point. While Ms. Ullman technically is not a creditor, her client is. She has always represented her client in this matter as evidenced by the Entry of Appearance she filed on behalf of Geraldine Renzulli (Doc. 8 in Lead Case). There can be no dispute that she took action on behalf of her

More recently, the Sixth Circuit Bankruptcy Appellate Panel held: "Attorneys may be held liable for violations of the automatic stay as a result of actions they have taken or omissions they have made in representation of their clients." *In re Wohleber*, 596 B.R. 554, 563 n.6 (6th Cir. BAP 2019)(citing *Timbs*).

Accordingly, this defense asserted by John R. Christie, individually, does not appear to be a basis for granting summary judgment in his favor.

7. **Additional Reasons To Deny The Motion For Summary Judgment**.

The record presently before the court is wholly inadequate for the court to find the absence of any genuine dispute regarding the material facts in this case.

The problems for Defendants' Motion start with the Answer filed in this case. The Movants denied the following, in full, for want of knowledge:

> 5. The defendant, **PIZZA PAN ELYRIA, LLC**, is a limited liability company incorporated under the laws of the State of Ohio, registered as "active" with the Office of the Ohio Secretary of State, has its principal place of business in Painesville, Ohio and has designated Jeffrey A. Boring, as statutory agent for service of process.

> 6. The defendant, **JEFFREY A. BORING**, had at all times pertinent hereto, an ownership interest in **PIZZA PAN ELYRIA, LLC**, and has acted on behalf of the interests of both **PIZZA PAN ELYRIA, LLC** and his personal interests, all in violation of the Automatic Stay provisions of 11 U.S.C. §362 , and the Permanent Injunction provisions of 11 U.S.C. §524.

> 7. The defendant, **THE CALABRESE LAW FIRM , LLC**, is a limited liability company incorporated under the laws of the State of Ohio, registered as "active" with the Office of the Ohio Secretary of State, has its principal place of business in Cleveland, Ohio and has designated Anthony O. Calabrese, III, as statutory agent for service of process.

---

client, rather than herself individually, in this matter and post-petition in the State Court Action. As counsel to Geraldine Renzulli, Ms. Ullman is individually responsible for her actions taken on behalf of her client. *See In re Frankel*, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008) (citing *In re Timbs*, 178 B.R. 989, 999 (Bankr. E.D. Tenn. 1994) (collecting cases)) ("[Creditor's Counsel] does not argue that he did not violate the stay because he only acted in a representative capacity to advance [Creditor's] interests. Numerous courts have found attorneys to be personally liable for damages under § 362(h) even when their actions were undertaken only within the scope as counsel for a creditor."). The automatic stay applied to Ms. Ullman as a result of her representation of Geraldine Renzulli. To suggest otherwise has no merit.".

8. The defendant, **ANTHONY O. CALABRESE**, had at all times pertinent hereto, an ownership interest in **THE CALABRESE LAW FIRM , LLC**, and has acted on behalf of the interests of both **THE CALABRESE LAW FIRM , LLC** and his personal interests, all in violation of the Automatic Stay provisions of 11 U.S.C. §362 , and the Permanent Injunction provisions of 11 U.S.C. §524.

[Adv. Doc. #1, p. 3; Adv. Doc. #6, p. 1, ¶4].

Thus, nothing in the denied portions of the Complaint can be taken as true. *See*, Fed. R. Civ. P. 8(b)(5); Fed. R. Bankr. P. 7008. Moreover, there is no information in Movant's Affidavit about these parties, other than the averment that Anthony O. Calabrese sublet offices in a suite "wherein Anthony O. Calabrese and his law firm, The Calabrese Law Firm were housed". [Adv. Doc. #20, p. 8, ¶3]. "Mail was delivered to the front desk of the suite located at 2400[12] One Cleveland Center, Cleveland, Ohio 44114". [*Id.*, ¶4]. The Affidavit further states that there was a front desk that was overseen, during some unstated time frame, that was "controlled, and otherwise occupied by representatives employed by The Calabrese Law Firm." [*Id.*, ¶5]. "Said individuals received the mail and distributed the same as directed by Anthony O. Calabrese and/or his employees and/or agents." [*Id.*, p. 9, ¶6].

While the court may assume, based on context, that as used in the Affidavit, "Petitioner" refers to Ragone, and "Stefanik & Christie" includes John R. Christie personally – still, taken in concert, paragraphs 7, 8, and 9 of the Affidavit are contradictory. The Affidavit states that Stephanik & Christie "never received notice of Petitioners Bankruptcy filing" [*Id.*, ¶7], and "never received notice of any Stay due to the Bankruptcy filing" [*Id.*, ¶8]. However, Stephanik & Christie's "first notice of the Bankruptcy was after the garnishment proceeding was filed" [*Id.*, ¶9]. Thus, the use of the word "never" in Paragraphs 7 & 8 do not appear to actually mean "never", if notice was actually received at a later date. This imprecision would appear to create a genuine issue in any event, but it is especially problematic when the Plaintiff has presented evidence, viewed in the light most favorable to the non-moving party, that the first garnishment against Ragone (albeit by all appearances unsuccessful) may have been filed on May 13, 2013, or shortly thereafter [Adv. Doc. #25-1, p. 29-32].

---

12/ Why this is relevant is unclear, when all the mail in issue here was delivered to either to "2450A One Cleveland Center", "2450 One Cleveland Center", or One Cleveland Center, Suite 2450". [Docs. ##5, 17, 27, 34 & 35].

More damaging to Movant's position is what is admitted by Movants in their Answer. The following was admitted in full:

> 10. The defendant, **JOHN R. CHRISTIE**, had, at all times pertintinent [sic] hereto, an ownership interest in **STEFANIK & CHRISTIE, LLC**, and has acted on behalf of the interests of both **STEFANIK & CHRISTIE, LLC**, and his personal interests, all in violation of the Automatic Stay provisions of 11 U.S.C. §362 , and the Permanent Injunction provisions of 11 U.S.C. §524.

*See,* Doc. #6, p. 2, ¶5 ("5. These Answering Defendants admit the allegations contained in Paragraphs 9 and 10 of Plaintiffs' Complaint.").

Viewed in the light most favorable to the non-moving party, the admission in Movants' Answer that John R. Christie and Stefanik & Christie, LLC had acted in their own interests, "all in violation of the Automatic Stay provisions of 11 U.S.C. §362 , and the Permanent Injunction provisions of 11 U.S.C. §524" [Doc. #6, p. 2, ¶5] appears to create a factual issue that precludes the granting Defendants' Motion for Summary Judgment.

An additional issue of material fact is raised by the Affidavit of Robert C. Wentz.  The Affidavit reflects that in March of 2016, "I contacted Attorney John Christie" about "why the wage garnishment was ongoing in light of the bankruptcy discharge."[13]   Based on Wentz's Affidavit, if John R. Christie and Stefanik & Christie did nothing, despite actual knowledge of 1) Ragone's bankruptcy, 2) the discharge of the obligation, and 3) the voiding of the underlying judgment, there is an issue as to whether that is sufficient for a finding of contempt.   The records of the Cleveland Municipal Court reflect a payment received from what appears to be Ragone's employer on and after March 29, 2016. [Adv. Doc. #25-1, p. 38-41].   They also appear to reflect a disbursement to Stefanik & Christie on March 30, 2016. [*Id.*, Ex. G, p. 38; Ex. H, p. 44].

The Affidavit further alleges that Attorney Wentz filed an "Emergency Motion to Stay Disbursements and Terminate Wage Garnishment in the Cleveland Municipal court" on April 8, 2016. [Adv. Doc. #25-1, Ex. I, p. 47 ¶ 5; Ex. G, p. 38, Entry 112; Ex. H, p. 44].   The Affidavit states that the Emergency Motion was mailed to John R. Christie on the same day [*Id.*, Ex. I, p. 47

---

13/   Notably, Defendant's Motion for Summary Judgment states: "the Petitioner contacted his own counsel who contacted Stefanik & Chrsite through its member, John R. Christie." [Adv. Doc. #20, p. 2].

6], with a cover letter that was attached to the Affidavit. [*Id.*, p. 49]. However, the documentation submitted by the non-moving Plaintiff appear to reflect wage garnishment monies continuing to be paid into the court by Ragone's employer from April 14, 2016 to July 20, 2016. [*Id.*, p. 38-41].

Other notable dates are May 17, 2016 and May 20, 2016. On May 17th, John R. Christie filed a Brief in opposition to Attorney Wentz's Emergency Motion to Stay Disbursement and Terminate Wage Garnishment. [*Id.*, p. 38]. On May 20th, John R. Christie filed a Motion to Reopen in Ragone's Chapter 7 case. [Doc. #37]. Clearly, at that point, John R. Christie had knowledge of the filing of Chapter 7 case, Case No. 13-51335, but the only evidence before the court regarding the actions John R. Christie took to stop the wage garnishment is the portion of his Affidavit stating: "Stefanik & Christie agreed to terminate the garnishment proceeding and not contest the release of any garnished funds from the Cleveland Municipal Court to the Petitioner." [Adv. Doc. #20, p. 9, ¶10]. And yet, the certified copy of the Municipal Court "Journal" appears to reflect garnishments in the amount of $203.59 each, from Ragone's employer on June 1, 2016, June 13, 2016, June 30, 2016, July 7, 2016, July 14, 2016, and July 20, 2016. [Adv. Doc. #25-1, Ex. F, pp. 39-41].

Regardless of when John R. Christie learned of the bankruptcy discharge, it was entered on June 18, 2015. [Doc. #33]. There is evidence, and apparent agreement, that $1,832.31 was returned to Plaintiff-Ragone. [Adv. Doc. #27-1 p. 2-3; Adv. Doc. #25, p. 3 ("$1,832.31 was returned to Plaintiff, through his attorney, Robert Wentz."); Adv. Doc. #25-1, Ex. G, p. 41, Entry 132 & Ex. H, p. 44]. However, viewed in the light most favorable to the non-movant, the amount garnished from Ragone post-discharge exceeds the amount of money that was returned to Plaintiff. [Adv. Doc. #25-1, pp. 36-40 (reflecting garnishments of $203.59, approximately twice a month, from June 26, 2015 through July 20, 2016)]. To the extent that Defendants retained monies received through garnishments based upon a judgment rendered void by 11 U.S.C. §524(a)(1), there is a genuine issue for trial.

The Defendants also assert, as a defense, that the monies went to Mr. Calabrese or his law firm. For example, Defendants' Reply states: "Money previously garnished was done so on behalf of The Calabrese Law Firm and/or Anthony Calabrese, III. Any and all proceeds from garnishment went benefit Anthony Calabrese, III and/or The Calabrese Law Firm." [Adv. Doc.

#27-1, p. 2].   The Reply again states: "Further, Plaintiff ignores the fact that all of the proceeds of the garnishment went to the benefit of The Calabrese Law Firm and/or Anthony Calabrese, III." [Adv. Doc. #27-1, p. 3].   The Reply also appears to state that The Calabrese Law Firm and/or Anthony Calabrese, III are the "actual holder of the debt".   [Adv. Doc. #27-1, p. 5].

The problems with these statements start with the fact that there is no record evidence regarding any monies going from Stefanik & Christie, LLC to The Calabrese Law Firm and/or Anthony Calabrese, III.   Nor is there anything in the cognizable record reflecting an alleged attorney-client relationship relating to this debt.

Plaintiff's Response alleges facts that differ from Defendants unverified statements, citing to the Assignment from the Calabrese Law Firm, LLC and Anthony Calabrese, III to Stephanik & Christie, LLC and John R. Christie:

> 4.      Pizza Pan Elyria, LLC, and Jeffrey Boring assigned their judgment against Plaintiff Frank R. Ragone Jr. to Calabrese Law Firm, LLC and Anthony Calabrese, III. which judgment was subsequently assigned to Defendants, Stephanik & Christie, LLC and John R. Christie, on July 14, 2013. (See EXHIBIT "D": "Assignement [sic] and Assumption of Agreement" attached to Defendants' Amended Motion to Reopen in Bankruptcy case number 13-51335 Docket Entry # 39 at Pages 23-25)

[Adv. Doc. 25, p. 2].

The Assignment Plaintiff has cited, Exhibit D, reflects an assignment of the obligation to Defendants on July 14, 2013 [Adv. Doc. #39-1, Ex. D, p. 23], just after the bankruptcy was filed on May 8, 2013 [Adv. Doc. #25-1, Ex. A, p. 3], and before the post-discharge wage garnishments began [*Id.*, Ex. F, p. 33].

Thus, the record evidence appears to only consist of the copy of the Assignment and Assumption Agreement.   While there is a statement that Assignor (The Calabrese Law Firm and/or Anthony Calabrese, III) owes legal fees to Assignee (Stefanik & Christie, LLC) [Adv. Doc. #25-1, Ex. D, p. 23], the document also states that the Assignor desires to assign the proceeds of the "garnishment proceeding involving Frank Ragone" to Assignee.   The Assignment further states that: "Assignor hereby sells, assigns transfers and sets over unto Assignee, its successors and assigns, all of Assignor's rights and benefits in, under and to the Proceeds." [*Id.*].

The certified documents from the Municipal Court submitted by Plaintiff reflect that after a "Change of Counsel" filed on November 20, 2014 [Adv. Doc. #25-1, Ex. F, p. 34], all monies

from the garnishment were reported as being disbursed to "Stefanik & Christie". That suggests that all unreturned garnished funds received after the entry of the bankruptcy discharge on June 18, 2015 were initially disbursed by the Cleveland Municipal Court to Stefanik & Christie. [Adv. Doc. #25-1, Ex. F, pp. 36-38]. This record is not inconsistent with the language of the Assignment, which states that it "sells, assigns, transfers and sets over unto Assignee, its successors and assigns, all of Assignor's rights and benefits in, under and to the Proceeds." [Adv. Doc. #25-1, p. 23]. Thus, who actually received the monies from the wage garnishment, and under what right, appears to be another genuine issue of material fact, based upon the record the court can consider in deciding the present Motion.

For all of the reasons set forth above, Movants have failed to demonstrate the absence of genuine issues of material fact, or their entitlement to judgment as a matter of law.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment be, and hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that a further pretrial scheduling conference be set for **June 11, 2019 at 3:00 p.m.** in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio 43604 so that a date for trial may be set. Parties may appear by telephone.