**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 31 2020

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 13-51335 |
| Frank R. Ragone, Jr., | Chapter 7 |
| Debtor. | Adv. Pro. No. 18-03070 |
| Frank R. Ragone, Jr., | Judge John P. Gustafson |
| Plaintiff, | |
| v. | |
| Pizza Pan Elyria, LLC, et al., | |
| Defendants. | |

## MEMORANDUM OF DECISION AND ORDER

This Adversary Proceeding came before the court for trial on Plaintiff-Debtor Frank Ragone, Jr.'s Complaint [Adv. Doc. #1], which alleges that Defendants Stefanick & Christie, LLC and John R. Christie[1] ("Defendants") pursued collection of a debt in violation of both the

---

1/ Though Plaintiff originally named additional defendants in his Complaint, Plaintiff voluntarily dismissed them from this adversary proceeding on June 6, 2018. [Adv. Doc. #9]. Thus, Stefanick & Christie, LLC and John R. Christie are the only remaining defendants in this case. Throughout this Memorandum, the court will refer to John

automatic stay and the discharge injunction

The above captioned Adversary Proceeding was transferred to this court on September 20, 2018 [Adv. Doc. #12], and the case number was changed from 18-05009-amk to 18-03070-jpg. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334, 157(a), and General Order 2012-7 of the United States District Court for the Northern District of Ohio. Actions to determine whether violations of the automatic stay and/or the discharge injunction have occurred are core proceedings that this Court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(A), (b)(2)(O).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials, weighed the credibility of witnesses, considered all of the admitted evidence, and reviewed the entire record in the case.

Because Plaintiff-Debtor has met his burden of showing that there was and is no fair ground of doubt that Defendants' conduct violated the discharge injunction, the court finds that Defendants acted in civil contempt when they continued to collect on a discharged debt and failed to turnover funds that had been garnished based on a void judgment. Accordingly, the court will sanction Defendants by awarding Plaintiff-Debtor $4,275.39 in actual damages and $10,580.00 in attorney fees incurred by Plaintiff-Debtor in relation to bringing this suit and otherwise defending against Defendants' actions.

## FACTUAL BACKGROUND

Many of the undisputed facts underlying this case were previously set forth in the court's prior Memorandum of Decision and Order that denied Defendant's Motion for Summary Judgment. [Adv. Doc. #32]. The court incorporates those facts by reference [*Id.*, pp. 2-10], and makes the following findings of fact from the trial that was held on August 12, 2019.

At the August 12th trial, counsel for Plaintiff-Debtor and Defendant John R. Christie appeared in person, with the latter opting to represent both himself and Defendant Stefanick & Christie, LLC. After opening statements were given, Plaintiff-Debtor called his first witness, Mr.

---

R. Christie as "Defendant" and Stefanick and Christie, LLC as "Defendant Firm."

Robert Wentz ("Mr. Wentz"), a Cleveland-area attorney whom Plaintiff-Debtor had engaged regarding Defendants' garnishments of Plaintiff-Debtor's wages. Mr. Wentz testified that, at Plaintiff-Debtor's behest, he contacted Defendant by telephone at the end of March 2016 and requested that the garnishments be stopped in light of the discharge that had been entered in Plaintiff-Debtor's Chapter 7 case. According to Mr. Wentz, Defendant did not agree to end the garnishments after that phone call. Subsequently, Mr. Wentz drafted an Emergency Motion ("Emergency Motion") to end the garnishments, filed it with the Cleveland Municipal Court, and sent Defendant a letter dated April 8, 2016 notifying him of the motion. [Ex. 10]. Mr. Wentz testified that, after several months of litigation in the state court, the garnishments were terminated despite Defendant's continued opposition. Per Mr. Wentz' testimony, Plaintiff-Debtor paid him a total of $500.00 for his initial efforts to stop the garnishment and his filing the Emergency Motion.

On cross-examination, Mr. Wentz stated that he was first contacted by Plaintiff-Debtor in late February or early March of 2016. Mr. Wentz also stated that he did not keep time records regarding his work on Plaintiff-Debtor's garnishment issue because he was not billing hourly for that work. Mr. Wentz admitted that, per the Cleveland Municipal Court docket ("State Court Docket") [Ex. 7] for Plaintiff-Debtor's garnishment case, Case No. 2013 CVH 007053, Defendants did not receive any monies garnished from Plaintiff-Debtor's wages after Mr. Wentz first contacted Defendant in late March of 2016.

On re-direct, Mr. Wentz identified numerous entries on the State Court Docket [Ex. 5, pp.12-15] that showed that Plaintiff-Debtor's wages continued to be garnished after Mr. Wentz first contacted Defendant in late March of 2016.

After Mr. Wentz was excused, Plaintiff-Debtor took the stand. Plaintiff-Debtor testified that he started working in sales for Mars Electric in January of 2011. Plaintiff-Debtor stated that he has joint custody of two dependents and that about $380.00 comes out of each paycheck in child support.

Though unsure of the specific date, Plaintiff-Debtor testified that, in either 2010 or 2011, he entered into an agreement with a Mr. Jeffrey Borling ("Mr. Borling") and Mr. Borling's limited liability company, Pizza Pan Elyria, LLC, to purchase a pizza restaurant located in Elyria. Plaintiff-Debtor explained that, after reviewing the location's financial history, he intended to own

3

and operate the restaurant at a profit. After operating the restaurant for around six months, Plaintiff-Debtor sold it and its assets because the venture was not profitable. Proceeds from those sales were turned over to Mr. Borling/Pizza Pan, LLC and the landlord who owned the storefront property leased by Plaintiff-Debtor.

Plaintiff-Debtor was then successfully sued by Mr. Borling and Pizza Pan, LLC for contractual damages which had not been paid from the proceeds of the sale of the Elyria pizza restaurant's assets. After Mr. Borling obtained a judgment against Plaintiff-Debtor ("Pizza Pan Judgment"), Plaintiff-Debtor filed for Chapter 7 bankruptcy on May 8, 2013. [Case No. 13-51335, Doc. #1]. Plaintiff-Debtor explained that he filed for Chapter 7 because he could not afford to make payments on the Pizza Pan judgment, nor could he afford to pay his other debts and expenses. While reviewing Exhibits 5 and 9, Plaintiff-Debtor testified that his wages were garnished starting on July 24, 2014 and ending on Jul 20, 2016. Plaintiff-Debtor further testified that the garnishments caused him a great deal of hardship and emotional distress. He also stated that the garnishments caused him to struggle to provide for his two children.

To attempt to make ends meet while his wages were garnished, Plaintiff-Debtor testified that he withdrew approximately $6,000.00 from his 401(k). While his Chapter 7 case was pending, Plaintiff-Debtor contacted his bankruptcy attorney, Rebecca Clark ("Ms. Clark"), whom he believed would contact Defendant to inquire about ending the garnishments. The garnishments continued, and according to Plaintiff-Debtor, Ms. Clark quoted him legal fees in the amount $1,500.00 as the cost of her pursuing the garnishment issue further.

Because Plaintiff-Debtor could not afford the additional $1,500.00 in legal fees requested by Ms. Clark, Plaintiff-Debtor eventually contacted Mr. Wentz and asked that he investigate the propriety of the ongoing garnishments. However, Mr. Wentz was unable to stop the garnishments, and Mr. Wentz then recommended that Plaintiff-Debtor consult with his current attorney, Mark Knevel, given Mr. Knevel's bankruptcy experience.

Plaintiff-Debtor eventually received back $1,832.31 in monies garnished from his wages that had been held over by the state court upon Mr. Wentz' filing of the Emergency Motion. Plaintiff-Debtor has not received back the remaining $9,161.55 in garnished wages.

On cross-examination, Plaintiff-Debtor testified that he contacted Ms. Clark numerous

4

times after he received his Chapter 7 discharge[2] to attempt to get the garnishments stopped. Plaintiff-Debtor stated that he stopped attempting to contact Ms. Clark after he had contacted Mr. Wentz, though he was unsure of the exact date. Plaintiff-Debtor admitted that he had never contacted Defendant or Defendant Firm, but stated that Ms. Clark represented that she had contacted Defendant regarding the garnishments.

When asked why he took no further actions to stop the garnishments between June of 2015 and April of 2016, Plaintiff-Debtor stated that he had no money to hire another attorney to pursue the garnishment further. Plaintiff-Debtor stated that, because Mr. Wentz investigated the garnishment issue before charging him the $500.00 to file the Emergency Motion, Mr. Wentz could have begun his investigation at any time between June of 2015 and April of 2016. Though unsure, Plaintiff-Debtor testified that he first contacted Mr. Wentz sometime in February of 2016 after learning of him through his girlfriend. Plaintiff-Debtor admitted that he did not know whether Mr. Anthony Calabrese ("Mr. Calabrese"), the Calabrese Law Firm, Mr. Borling, or the Pizza Pan company itself received any of the monies garnished from his wages. However, Plaintiff-Debtor testified that he believed Defendant Firm had received some of the garnishments because the garnishment docket [Ex. 9] included numerous entries under the "Stefanick & Christie LLC" name.

On redirect, Plaintiff-Debtor identified Exhibit 11 as the contract for legal services he entered into with Mr. Knevel in June of 2016. Plaintiff-Debtor also explained that he obtained Mr. Knevel's services in order to respond to the Motion to Reopen that had been filed by Defendants in his Chapter 7 case on May 20, 2016. [Case No. 13-51335, Doc. #39].

In response to the court's inquiry, Plaintiff-Debtor testified that he borrowed money from his family in order to pay Mr. Knevel and to keep his home's utilities paid, but was unsure of specific dates. Plaintiff-Debtor explained that he likely borrowed some of those funds shortly before he first obtained Mr. Knevel's services around mid-2016. Plaintiff-Debtor testified that his power had been shut off numerous times while his wages were being garnished.

Defendant was then called to the stand. Defendant, an attorney licensed to practice in

---

2/ The court notes that Plaintiff-Debtor's Chapter 7 case was first administratively closed on February 5, 2014, without the granting of a discharge, due to Debtor's initial failure to file the required financial management course certification. [Case No. 13-51335, Doc. #26]. After the case was reopened by Ms. Clark and the required certificate was filed, Plaintiff-Debtor received a discharge on June 18, 2015. [*Id.*, Doc. #33].

5

Ohio, works out of law offices located in Cleveland, Ohio. Defendant explained that his law office has been located in the same building since 2013, but that its specific address had changed as his office changed locations within the building. With reference to Exhibit 6, an Assignment and Assumption Agreement ("Second Assignment"), Defendant recognized his signature and agreed that the Second Assignment dealt with proceeds from the garnishment of Plaintiff-Debtor's wages. Defendant then explained that the Assignment was entered into to "cut out the middleman" regarding the Calabrese Law Firm's payment of a debt owed Defendant Firm. Defendant explained that the Calabrese Law Firm assigned its interest in the garnishment of Plaintiff-Debtor's wages to Defendant Firm to efficiently repay that debt.

When asked about the Second Assignment's date, Defendant testified that he signed it on November 15, 2014. [Ex. 6, p. 3]. Defendant stated that the Second Assignment was one of several assignments and that it was his understanding that the Pizza Pan judgment and related garnishment proceeds were first assigned to the Calabrese Law Firm from Mr. Borling/Pizza Pan Elyria, LLC ("First Assignment"). Defendant then identified Exhibit 7 as an Order and Notice of Garnishment and agreed that it contained his signature, dated June 5, 2014. Defendant also agreed that the Order and Notice of Garnishment described Defendant as the attorney representing judgment creditor Pizza Pan Elyria, LLC.

When asked about the arrangement between the Calabrese Law Firm and Defendant Firm between July 14, 2013 and November 15, 2014, Defendant stated that the garnishments went directly to the Calabrese Law Firm and that Defendants did not receive any of the wages garnished during that period. Defendant agreed that he represented Pizza Pan Elyria, LLC throughout the entire period of time during which Plaintiff-Debtor's wages were being garnished. When asked why the state court sent garnished monies to the Calabrese Law Firm instead of him, the judgment creditor's counsel of record, Defendant stated that he merely facilitated the transfer of garnished monies to the parties to which they were owed.

Despite first stating that he had not represented Pizza Pan Elyria, LLC or Mr. Borling prior to the entry of the Order and Notice of Garnishment on June 5, 2014, Defendant admitted that he signed a cognovit judgment on behalf of Pizza Pan Elyria, LLC on January 9, 2013.

Defendant testified that, during the time relevant to the garnishment of Plaintiff-Debtor's wages, Defendants shared office space with 3-5 other independent firms, and believed that the

lessor of his firm's office space was an entity related to Mr. Calabrese. Defendant testified that, during that time, Defendants were sub-tenants of a landlord entity owned by Mr. Calabrese.

When asked when he first became aware that there was a problem with Defendants receiving their mail, Defendant stated that it was sometime after the beginning of 2016. Defendant explained that problems with mail led to his decision to move his firm elsewhere. Defendant testified that he may have missed other important pieces of mail. Defendant stated that when he became aware of the mail problem, he reviewed the Cleveland Municipal Court docket for Plaintiff-Debtor's garnishment case and the docket of Plaintiff-Debtor's Chapter 7 case.

Counsel for Plaintiff-Debtor then asked Defendant whether Mr. Calabrese provided him with a case file when Defendant represented the Calabrese Law Firm for purposes of the First Assignment. In response, Defendant first stated that he received all of the relevant documents, but then demurred and stated that he did not receive any notice of Plaintiff-Debtor's bankruptcy filing. Defendant stated that he did not review the proofs of claim Mr. Calabrese filed on behalf of Pizza Pan Elyria, LLC in Plaintiff-Debtor's Chapter 7 case. [Ex. 4]. Defendant stated that, at the time of the First Assignment, he believed that he had received all of the relevant documents.

Defendant stated that he could not recall whether he or anyone from Defendant Firm attended the June 28, 2016 garnishment hearing at the Cleveland Municipal Court. Defendant stated that the garnished monies Defendant Firm received were credited to Mr. Calabrese's client account, and that he was not aware of any funds being returned to Plaintiff-Debtor. Defendant stated that he attempted to have Plaintiff-Debtor's discharge revoked [Case No. 13-51335, Doc. ##39, 57] after consulting with attorneys experienced in bankruptcy, including an attorney named Richard Lautner, but abandoned the revocation of discharge effort after deciding that plan was not viable.

Counsel for Plaintiff-Debtor rested his case and Defendant took the stand to present his defense. Defendant testified that he had never been in a situation like this before, and that he was relatively unfamiliar with bankruptcy. He explained that, because he was not involved in the garnishment matter when Plaintiff-Debtor first filed for Chapter 7, he did not have notice of the bankruptcy filing. Defendant further explained that he could not remember some details of what had occurred given that several years had passed since he was involved in garnishing Plaintiff-Debtor's wages.

7

Defendant testified that all of the monies garnished from Plaintiff-Debtor's wages went straight to the Calabrese Law Firm until November 13, 2014. Thereafter, the Second Assignment became effective and all of the garnished monies were credited against outstanding debts owed to Defendant Firm by Mr. Calabrese and the Calabrese Law Firm, both of which still owe the Defendant Firm money. Defendant was not sure why the Second Assignment was executed, but stated that it was not done at the request of Defendants and was likely related to convenience. Defendant testified that he did not personally benefit from the garnishments that were made, and that his compensation remained the same regardless of whether the garnished monies were received.

Defendant testified that he did not recall ever speaking with Ms. Clark and that the only communication regarding the garnishment he remembered was speaking with Mr. Wentz sometime before April 8, 2016. Defendant further testified that his phone call with Mr, Wentz was the first notice of Plaintiff-Debtor's bankruptcy that Defendants received. Defendant admitted that "we did not do it right" relative to Defendants' attempt at reopening Plaintiff-Debtor's bankruptcy case in order to seek discharge revocation.

On cross-examination, Defendant stated that he has never filed a bankruptcy on behalf of anyone. Defendant was not surprised to learn that Richard Lautner, the bankruptcy attorney he consulted regarding the discharge revocation attempt, had never filed a bankruptcy case in the Northern District of Ohio. Defendant stated that Richard Lautner was a Chicago-area bankruptcy attorney. Defendant elaborated by stating that, to his knowledge, federal bankruptcy law is the same in every jurisdiction. Defendant admitted that he did receive some personal benefits when Defendant Firm received money.

Though unsure, Defendant estimated that it would have taken him about a week to investigate the issues raised by Mr. Wentz during their April of 2016 phone call. When asked why he took no action in the garnishment proceeding despite more than a week passing since his April of 2016 conversation with Mr. Wentz, Defendant stated that he could not recall specifically when he learned that Plaintiff-Debtor had filed a Chapter 7 bankruptcy that led to a discharge.

When asked why he opposed Mr. Wentz' Emergency Motion seeking an end to the garnishment, Defendant stated he wanted the court to continue receiving and holding garnished funds while he investigated whether an end to the garnishment was appropriate. Upon being

8

asked whether Ms. Clarke ever contacted him regarding Plaintiff-Debtor's bankruptcy filing, Defendant could not recall, but thought that she had not given that she did not take any steps to dispute the garnishment of Plaintiff-Debtor's wages. Defendant admitted that maybe it took him longer than was proper to investigate whether the garnishment was proper after his April of 2016 contact with Mr. Wentz, but stated that Plaintiff-Debtor's inactions and his attorneys' inactions were a fact. Defendant admitted that neither he nor Defendant Firm had returned any garnished funds to Plaintiff-Debtor.

Upon the court's inquiry, Defendant testified that, when collecting on the Pizza Pan judgment, he periodically reconciled the incoming garnishment payments with the Calabrese Law Firm's records. However, Defendant testified that he did not know that the Calabrese Law Firm received $736.76 in Plaintiff-Debtor's Chapter 7 case on behalf of its client, Pizza Pan Elyria, LLC. [Case No. 13-51335, Doc. #25, p. 4]. Defendant further testified that he is not familiar with bankruptcy law, and stated that he would not have taken part in the garnishment proceedings had he known that a bankruptcy had been filed.

When asked why Defendant Firm did not return the garnished monies upon learning from Mr. Wentz that the Pizza Pan judgment debt had been discharged, Defendant stated that he was not sure. The court subsequently admitted Exhibits 1-7 and 9-11 into evidence, overruling Defendants' objection to the admission of exhibits regarding items already included on the docket of this adversary proceeding and underlying Chapter 7 case. Defendant also made an oral motion to amend his Answer to conform to the evidence presented at trial. Plaintiff-Debtor objected, arguing that Defendant had waited too long to amend the initial pleadings. The court informed the parties that it would rule on the issue as a component of its decision in this case.

After closing arguments, the court gave the parties the opportunity to file post-trial briefs, and ordered that Plaintiff-Debtor file a breakdown of legal fees incurred as a result of this litigation. No post-trial briefs were filed, but Plaintiff-Debtor did file a breakdown of legal fees on the docket of his Chapter 7 case. [Case No. 13-51335, Doc. #33].

## LAW AND ANALYSIS

As an initial matter, Defendants made an oral motion at the end of trial seeking to amend their Answer to conform to the evidence presented, arguing that an erroneous admission to the contempt charges at hand was merely the product of inadvertence. Despite Plaintiff-Debtor's

9

objection on the basis of timeliness, the court will exercise its discretion and grant Defendants' oral motion to conform their Answer to the evidence presented at trial.

Timely motion or not, this matter is ripe for decision on the merits and the court declines to include or exclude issues on technical grounds at this point in the adversary proceeding. Further, the court finds that Plaintiff-Debtor will not be prejudiced by the granting of Defendants' oral motion because, as demonstrated at trial, Plaintiff-Debtor has been on notice as to the gravamen of Defendants' defense throughout these proceedings. *See*, Fed. R. Civ. P. 15(a)(2)("The court should freely give leave when justice so requires.").

Thus, the court deems Defendants' Answer amended to conform to the evidence presented at trial,[3] an amendment that relates back to Defendants' filing of the Answer on March 9, 2018. [Adv. Doc. #6]; *see*, *In re Neely*, 608 B.R. 806, 828 (Bankr. N.D. Ill. 2019)(quoting 6A Fed. Prac. & Proc. §1497)("Amendments that merely correct technical deficiencies…meet the Rule 15(c)(1)(B) test and will relate back.").

Plaintiff-Debtor brought claims for both automatic stay and discharge injunction violations. Accordingly, the court will address each of those claims in turn.

**1. The Automatic Stay.**

In order to prevail on a §362(k) claim, a plaintiff must prove by a preponderance of the evidence that the stay imposed under §362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation. *In re Grine*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010); *see also*, *In re McCormick*, 2018 WL 6787558 at *5, 2018 Bankr. LEXIS 4041 at *12 (6th Cir. BAP Dec. 26, 2018); *In re Baer*, 2012 WL 2368698 at *10, 2012 Bankr. LEXIS 2849 at *27 (6th Cir. BAP June 22, 2012); *Collett v. Lee Oil Company, Inc. (In re Collett)*, 2014 WL 2111309 at *4, 2014 Bankr. LEXIS 2250 at *10 (6th Cir. BAP May 21, 2014); *In re Shrum*, 597 B.R. 845, 856 (Bankr. E.D. Mich. 2019); *In re Witham*, 579 B.R. 787, 792-793 (Bankr. E.D. Ky. 2017); *In re Mocella*, 552 B.R. 706, 714 (Bankr. N.D. Ohio 2016); *In re Mitchell*, 545 B.R. 209, 220 (Bankr. N.D. Ohio 2016); *In re Phillips*, 2015 WL 4356641 at *2, 2015 Bankr. LEXIS 2305 at *6 (Bankr.

---

3/ Although the amendment is allowed, the failure to immediately file an amended Answer after the issuance of the court's decision on Defendants' Motion for Summary Judgment is confounding. The decision clearly and pointedly referenced the admissions in Defendants' Answer. That a licensed attorney could read that decision and not quickly move to amend Defendants' Answer is extremely disappointing. To be clear: attorneys have an obligation to read the full decision of the court when their Motion for Summary Judgment is denied. Just looking to see if the Motion was granted or denied, without reading the basis for the decision, is not acceptable.

E.D. Tenn. July 13, 2015)(quoting *Collett*); *In re Swartzentruber*, 2014 WL 2930450 at *1, 2014 Bankr. LEXIS 2804 at *3, (Bankr. N.D. Ohio June 27, 2014); *In re Pawlowicz*, 337 B.R. 640, 646 (Bankr. N.D. Ohio 2005); *In re Skeen*, 248 B.R. 312, 316–17 (Bankr. E.D. Tenn. 2000).

Section 362(k)(1) states:

(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Under §362(k), damages must be proven with reasonable certainty and cannot be based on conjecture or speculation. *See*, *Archer v. Macomb Cnty. Bank (In re Archer)*, 853 F.2d 497, 499–500 (6th Cir. 1988). As the party seeking damages, the debtor has the burden of proving entitlement to damages. *In re Sharon*, 234 B.R. 676, 687 (6th Cir. BAP 1999)("The bankruptcy court appropriately assigned to the Debtor the burden to prove entitlement to damages.").

In applying that standard to the facts of this case, the court finds that Plaintiff-Debtor's stay violation claims fail because the automatic stay in Plaintiff-Debtor's Chapter 7 case lapsed on February 5, 2014 [Case No. 13-51335, Doc. #26], months before any monies were garnished from Plaintiff-Debtor's wages. Thus, there was no stay in effect when Defendants became involved in the garnishment proceedings.

The only factual basis that arguably supports a finding of Defendants' willfulness is that Ms. Clark, Plaintiff-Debtor's original bankruptcy attorney, allegedly called Defendant during the pendency of Plaintiff-Debtor's Chapter 7 case and attempted to have the garnishments stopped. The only evidence of record on that issue is Plaintiff-Debtor's trial testimony, testimony that consisted of hearsay that was only permitted due to Defendant having invited it with his line of questioning.

Even if the court were to credit that evidence, the automatic stay had terminated upon the administrative closing of the case, which occurred before the alleged call from Ms. Clark. *See*, 11 U.S.C. §362(c)(2)(A). The Debtor's Chapter 7 case was administratively closed on February 5, 2014 [Case No. 13-51335, Doc. #26], terminating the automatic stay by operation of law.

Accordingly, the court finds against Plaintiff-Debtor on his §362(k) claim and will dismiss it with prejudice.

**2. The Discharge Injunction.**

11

A bankruptcy discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under [the Code] ... [and]
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ....

11 U.S.C. Section 524(a)(1)-(2).

The effect of a bankruptcy discharge on a judgment is described in Collier on Bankruptcy as follows:

> Section 524(a)(1) provides that any judgment on a debt that is discharged is void as a determination of the debtor's personal liability. Section 524(a)(1) clearly pertains to judgments obtained both before and after the discharge order, in that it refers to "any judgment at any time obtained."
>
> \* \* \* \* \* \*
>
> Section 524(a) is meant to operate automatically, with no need for the debtor to assert the discharge to render the judgment void. Because of the language that such a judgment is void, "whether or not discharge of such debt is waived," a creditor cannot claim that the voidness of the judgment was waived under a theory of estoppel[4] when a debtor fails to raise the discharge as a defense.

4 Collier on Bankruptcy, ⁋524.02[1] (16th ed. 2019)(citing *Lone Star Sec. & Video v. Gurrola (In re Gurrola)*, 328 B.R. 158 (9th Cir. BAP 2004)); *see also*, *In re Jones*, 389 B.R. 146, 163 (Bankr. D. Mont. 2008).

In light of the effect of the discharge injunction on judgments, the court finds that the Pizza Pan judgment, upon which Defendants relied in seeking to garnish the wages of Ragone, was void as of June 18, 2015, when the discharge was entered in Plaintiff-Debtor's Chapter 7 case. [Case

---

4/ *See also*, *In re Banks*, 577 B.R. 659, 666-667 (Bankr. E.D. Va. 2017)("The gravamen of Baumann's defense is that the Debtor did nothing to mitigate his damages and that the Debtor's recovery should be limited to the funds Baumann holds in escrow. Relying on *In re Sheets*, Case No. 12-31723, 2014 WL 4831339, at \*4 (Bankr. E.D. Va. Sept. 29, 2014), Baumann argues that the trial of this matter could have been avoided, if only the Debtor had asked for the money back. This argument ignores that it was Baumann who had the affirmative duty to remit to the Debtor the wages Baumann had unlawfully garnished.")(footnote omitted).

No. 13-51335, Doc. #33]; *see*, 4 Collier on Bankruptcy, ₱524.02[1] (16th ed. 2019)(citation omitted).

The evidentiary standard necessary for a court to find a party in civil contempt of the discharge injunction is one of "clear and convincing evidence." *See*, *In re Botson*, 531 B.R. 719, 724 (Bankr. N.D. Ohio 2015)(citing *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir.2006)).

A recent decision by the United States Supreme Court set the legal standard for finding a party in contempt of the discharge injunction. In *Taggart v. Lorenzen*, __U.S.__, 139 S.Ct. 1795, 204 L.Ed.2d 129 (2019), the Supreme Court held that "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." 139 S.Ct. at 1804. In other words, "a court may impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.* at 1801.

As applied to the facts in this case, *Taggart* supports a finding that Defendants were in civil contempt of Plaintiff-Debtor's June 18, 2015 discharge injunction starting no later than April 15, 2016, approximately one week after Defendant was sent a letter by Mr. Wentz and informed of Plaintiff-Debtor's bankruptcy case. From that point until the final garnishment was made on July 20, 2016 [Ex. 5, p. 15], Defendants had no objective basis for refusing to terminate the garnishment proceedings and for failing to return the monies garnished. In other words, the court finds that the testimony elicited at trial showed, by clear and convincing evidence, that it was objectively unreasonable for Defendants to hold onto the $4,275.39 in garnished funds after having a week to investigate the discharge issue raised by Mr. Wentz's April 8 letter. It was also objectively unreasonable for Defendants to take no affirmative steps to end the garnishment of Plaintiff-Debtor's wages upon learning from Mr. Wentz that Plaintiff-Debtor had received a bankruptcy discharge.

A simple confirmatory search of publicly accessible court records would have shown Defendant, a licensed attorney who engaged in collections work, that the judgment debt underlying his claim to the garnished funds was subject to a valid bankruptcy discharge. Even if the court were to credit Defendant's statement that he lacks experience in bankruptcy, he testified that he had access to the advice of experienced bankruptcy attorneys, further supporting a finding that

13

Defendants acted unreasonably when put on notice that they were collecting on a debt subject to the discharge injunction.[5] In other words, it may have been objectively reasonable to take a week to investigate whether the Pizza Pan judgment had been discharged in Plaintiff-Debtor's Chapter 7 case. However, it was objectively unreasonable for Defendants to hold onto garnished funds for months while Plaintiff-Debtor was forced to incur legal fees to pursue monies that he clearly had a superior right to. *See*, *Banks*, 577 B.R. at 666-667 (holding that a creditor has an affirmative duty to turnover wrongfully garnished funds).

Additionally, Defendant's testimony that, at least as of his mid-April of 2016 communications with Mr. Wentz, he was aware of problems with his firm's mail procedures further supports a finding that Defendants' refusal to turnover garnished monies or end the garnishment outright was objectively unreasonable. Rather than prioritize an investigation into whether he or Defendant Firm had failed to receive mailed notice of Plaintiff-Debtor's bankruptcy, Defendant actively opposed Mr. Wentz's state court Emergency Motion and held onto thousands of dollars in garnished funds, funds that have still not been returned.

Upon finding that a party acted in civil contempt of the discharge injunction, a bankruptcy court may "sanction the contemnor by awarding damages and attorneys' fees to the debtor" pursuant to both its inherent contempt power and §105(a). *In re Jones*, 603 B.R. 325, 334 (Bankr. E.D. Ky. 2019)(citations and quotations omitted); *see*, *In re Bahnsen*, 547 B.R. 779, 786 (Bankr. N.D. Ohio 2016)("If contempt is established, the injured party may be able to recover damages as a sanction for contempt."); *In re Palozzola*, 2013 WL 4462298 at *2 (Bankr. N.D. Ohio August 19, 2013)("[A]s a sanction for contempt, the injured party may be able to recover damages and, where necessary to effectuate the purposes of the discharge injunction, reasonable attorney fees.")(citations omitted).

Having found Defendants in contempt of the discharge, the court will sanction Defendants for the $4,275.39 that was garnished from Plaintiff-Debtor's wages after June 18, 2015 because those funds were collected in execution on a judgment that was rendered void by Plaintiff-Debtor's

---

5/ Based upon its review of the relevant case law, the court finds that the discharge's legal effect on a properly scheduled judgment debt is a well-settled matter of law, particularly relative to the understanding of an active attorney. *See*, 4 Collier on Bankruptcy, ¶524.02[1] (16th ed. 2019)(citing *Lone Star Sec. & Video v. Gurrola (In re Gurrola)*, 328 B.R. 158 (9th Cir. BAP 2004)). Defendants have not provided any cases to the contrary.

14

Chapter 7 discharge entered on that day.[6] Further, Defendants unreasonably held onto those funds for months, forcing Plaintiff-Debtor to pursue this adversary proceeding to effectuate his discharge. Thus, the court finds appropriate additional sanctions in the form of attorney fees related to prosecution of this action. *See*, *Jones*, 603 B.R. at 334. Using Plaintiff-Debtor's counsel's submitted fee breakdown [Case No. 13-51335, Doc. #70] and the testimony showing that Plaintiff-Debtor paid Mr. Wentz $500.00 to file the Emergency Motion in the state court garnishment proceeding, the court finds that sanctions amounting to $10,580.00 in attorney fees are appropriate here.[7]

However, the court declines to find that Defendants' filing of the Motions to Reopen constitute contempt of the discharge for two reasons. First, as a general proposition, entities should not be discouraged from making filings in bankruptcy cases. Second, remedies aside from contempt, such as sanctions under Federal Rule of Civil Procedure 11, were available as a means of redressing harms caused by what appears to have been an unmeritorious and untimely attempt to revoke Plaintiff-Debtor's discharge.[8] Thus, the court finds that Defendants' filings in Plaintiff-Debtor's Chapter 7 case were not so objectively unreasonable as to warrant a finding of contempt.

In sum, the court finds that Plaintiff-Debtor produced clear and convincing evidence showing that Defendants acted in contempt of the discharge injunction by refusing to turnover the monies garnished after Plaintiff-Debtor's discharge was entered. Similarly, Defendants were in contempt by taking no steps to end the garnishment proceedings that continued for months after

---

6/ The court agrees with the case law holding that where there has been a garnishment of funds based upon a discharged debt, regardless of notice, the full amount of the post-discharge garnishments should be ordered returned. *See*, *In re Thal*, 2018 WL 2182304 at *4, 2018 Bankr. LEXIS 1308 at **10-11 (Bankr. S.D. Fla. May 9, 2018); *In re Banks*, 577 B.R. 659, 667 (Bankr. E.D. Va. 2017)("This argument ignores that it was Baumann who had the affirmative duty to remit to the Debtor the wages Baumann had unlawfully garnished."); *Pritner v. COFCO Credit Co., L.L.C. (In re Pritner)*, 323 B.R. 802 (Table), 2005 WL 705363 at *3, 2005 Bankr. LEXIS 404 at *9 (10th Cir. BAP March 21, 2005); *In re Venegas*, 257 B.R. 41, 47-48 (Bankr. D. Idaho 2001); *In re Griffin*, 108 B.R. 717, 720 Bankr. W.D. Mo. 1989).

7/ The court finds that Plaintiff-Debtor's counsel's hourly rate of $350.00 to be reasonable under the facts of this case, and Defendants did not dispute the submitted fee breakdown despite being expressly informed of their right to do so.

8/ Debtor had properly listed the parties that held the Pizza Pan judgment debt at the time his Chapter 7 case filed (Mr. Borling/Pizza Pan Elyria, LLC) [Case No. 13-51335, Doc. #1, p. 16], Proofs of Claim were filed on behalf of Pizza Pan Elyria, LLC [*Id.*, Claims 1-1, 2-1], and every deadline for denial of discharge and revocation of discharge actions had passed.

Defendants were first put on notice of Plaintiff-Debtor's discharge. Accordingly, the court will sanction Defendants by awarding Plaintiff-Debtor damages that flow from those refusals.

Defendant argues that he should not be held personally liable for the contemptuous acts he engaged in on behalf of Defendant Firm. However, the court finds this argument unpersuasive given the case law holding counsel personally liable for acts taken in contempt of the discharge injunction. *See*, *e.g.*, *In re Joseph*, 584 B.R. 696 (Bankr. E.D. Ky. 2018); *Burton v. Mouser*, 2010 WL 996537, 2010 Bankr. LEXIS 675 (Bankr. W.D. Ky. March 16, 2020); *see also*; *In re Timbs*, 178 B.R. 989, 995 (Bankr. E.D. Tenn. 1994); *In re Frankel*, 391 B.R. 266, 271 n. 6 (Bankr. M.D. Pa. 2008)("Wix does not argue that he did not violate the stay because he only acted in a representative capacity to advance Strayer's interests. Numerous courts have found attorneys to be personally liable for damages under § 362(h) even when their actions were undertaken only within the scope as counsel for a creditor."); *In re Renzulli*, 2015 WL 9777743 at *6, 2015 Bankr. LEXIS 4435 at *15, (Bankr. D. N.J. Nov. 23, 2015). Based on *Taggart*'s objective standard for contempt of the discharge injunction, the court holds that Defendant's objectively unreasonable acts render his conduct sanctionable to the same extent as Defendant Firm.

Accordingly, the court finds that both Defendant and Defendant Firm should be sanctioned for their contempt of the discharge injunction.

## Conclusion

For all of the reasons set forth above, the court finds that Plaintiff-Debtor's stay violation claims fail and should be dismissed with prejudice. However, the court finds in favor of Plaintiff-Debtor on his contempt of discharge allegation, and finds that both Defendant and Defendant Firm are sanctioned in the amount of $4,275.39 in unreturned garnishments constituting actual damages, and $10,580.00 in attorney fees incurred to prosecute this adversary proceeding.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendants John R. Christie and Stefanick & Christie, LLC be held in civil contempt of the discharge injunction entered in Plaintiff-Debtor Frank R. Ragone, Jr.'s Chapter 7 case. A separate entry of Judgment will be entered by the court contemporaneously with this Memorandum.

18-03070-jpg    Doc 46    FILED 03/31/20    ENTERED 03/31/20 15:28:12    Page 17 of 17